THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIERRA CLUB, a California nonprofit corporation, et al.,<br>                    Plaintiffs,<br><br>         v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br>                    Defendant. | CASE NO. C13-00967-JCC<br><br>ORDER GRANTING DEFENDANT'S PROTECTIVE ORDER IN PART |

This matter comes before the Court on Defendant's motion for protective order (Dkt. No. 88) and Plaintiffs' cross-motion to compel discovery (Dkt. No. 93). Defendant seeks a protective order to keep sensitive business information and certain study results confidential. Dkt. No. 88, p. 2. The Court adopts the proposed order as to the sensitive business information, with the caveat that Plaintiffs may use protected information for the purpose of joining additional parties to this suit. The Court does not find good cause to issue a protective order over the studies, except to the extent that study results implicate sensitive business information. The Court declines to adopt the two-tiered system of document classification proposed in Defendant's proposed protective order (Dkt. No. 88, Attachment 1).

Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary, hereby GRANTS the motion in part, and ADOPTS the proposed protective order (Dkt. No. 88, Attachment 1) with modifications and exceptions.

I.     BACKGROUND

Plaintiffs, seven nonprofit corporations, bring suit against Defendant Burlington Northern Santa Fe Railway Company for alleged violations of the Federal Water Pollution Control Act (commonly referred to as the "Clean Water Act," and hereinafter "CWA"), 33 U.S.C. §§ 1251, *et seq.* Plaintiffs allege that when Defendant transports coal on its railways, the process discharges pollutants into the waters of the United States in violation of the CWA. Dkt. No. 81, pp. 10–15.

Currently conducting discovery, the parties disagree about whether a protective order regarding Defendant's responses to Plaintiffs' Interrogatories 1–5 is necessary. Dkts. No. 88–96. Plaintiffs object to the implementation of a protective order and move the Court to compel production of outstanding discovery. Dkt. No. 93.

## II.   DISCUSSION

### A.   Materials for Which Protective Order is Sought

Defendant seeks a protective order over its responses to the following:

Interrogatory No. 1: Identify all <u>schedules</u> of BNSF Railway shipments of coal or petcoke in or through the State of Washington, from April 16, 2008 to present.

Interrogatory No. 2: Identify all <u>customers or purchasers</u> of BNSF shipments of coal or petcoke, by date of shipment, in or through the State of Washington, from April 16, 2008 to present.

Interrogatory No. 3: Identify all <u>owners and lessors</u> of all rail cars carrying coke or petcoke shipped by BNSF Railway in or through the State of Washington, by date of shipment, from April 16, 2008 to present.

Interrogatory No. 4: Identify all <u>receipts, bills of lading, and manifests</u> of all BNSF trains shipping coal or petcoke in or through the State of Washington, from April 16, 2008 to present.

Interrogatory No. 5: Identify all <u>studies</u> of coal or petcoke discharges to land or water from rail cars shipped by BNSF Railway or other carriers from 2000 to present."

Dkt. No. 88, p. 2 (emphasis added).

## B. Standard of Review

The Federal Rules of Civil Procedure favor broad pre-trial discovery. *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). Information "reasonably calculated to lead to the discovery of admissible evidence" is discoverable. *Surfvivor Media, Inc. v. Survivors Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (internal citation omitted). District courts are afforded broad discretion in determining what is relevant and discoverable. *Id.* For good cause, the Court may issue a protective order to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Trade secrets are specifically identified as warranting a protective order. Fed. R. Civ. P. 26(c)(1)(G).

The party moving for a protective order bears "a heavy burden" of showing good cause. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (Good cause requires showing that "specific prejudice or harm will result if no protective order is granted.") (internal citation omitted); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (internal citation omitted).

## C. Basis for Protective Order

In its briefing, Defendant claims that three bases confer "good cause" for a protective order: (1) the information constitutes trade secrets under Fed. R. Civ. P. 26(c)(1)(G), (2) the information is protected by statute, 49 U.S.C. § 11904, and (3) contractual agreements between Defendant and its customers require confidentiality. Dkt. No. 88, p. 5. As the Court finds good cause to protect Defendant's trade secrets, it is unnecessary to examine the remaining arguments.

### i. Interrogatories 1–4 are Trade Secrets

"Where trade secrets or other confidential commercial information is involved, the court

will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *Seiter v. Yokohama Tire Corp.*, C08-5578 FDB, 2009 WL 2461000, at *2 (W.D. Wash. Aug. 10, 2009) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992)).

In assessing whether information warrants protection as a trade secret, courts may consider factors such as: (1) the ease or difficulty of ascertaining the information from public sources; (2) the measures taken to guard the information's secrecy; (3) the value of the information to the business or to its competitors; and (4) the amount of time, money, and effort expended in development of the information. *See Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006); *Four Star Capital Corp. v. Nynex Corp.,* 183 F.R.D. 91, 110 (S.D.N.Y.1997); *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 441–42 (Wash. 1999).

The information sought in Interrogatories 1–4 constitutes trade secrets. Information about Defendant's pricing, customer lists, and schedules is vigorously guarded and difficult to ascertain. Dkts. No. 88–92. For example, by the very terms of its contracts with customers, Defendant requires confidentiality. *Id.* Federal statute, 49 U.S.C. § 11904, prohibits certain disclosures by rail carriers, making the information more difficult for the public to ascertain.[1] Furthermore, rail transportation information is "so confidential and valuable that people pay [data aggregation companies] to estimate it for them because the actual data is not publicly

---

[1] These disclosures are not uniformly prohibited, however. The statute contains the following exception:
> "This part does not prevent a rail carrier providing transportation subject to the jurisdiction of the Board under this part from giving information. . . *in response to legal process issued under authority of a court of the United States or a State*. . ."

49 U.S.C. § 11904(c)(1) (emphasis added).

ORDER GRANTING DEFENDANT'S
PROTECTIVE ORDER IN PART
PAGE - 4

available." Dkt. No. 96, pp. 9–10. The valuable, private, and specific information regarding Defendant's pricing, schedules, and customer lists is a trade secret.

Interrogatory 5, requesting "studies of coal or petcoke discharges. . . from rail cars shipped by BNSF Railway. . ." does not itself warrant a protective order as a trade secret. Defendant argues that, without a protective order, this discovery will deter participation in future studies. Dkt. No. 90, p. 5. However, there is not a clear record or specific findings regarding these studies; their content is only alluded to in the parties' briefing.[2] The Defendant has not shown good cause for a protective order with regard to these voluntary studies.

If the studies reveal trade secrets relating to pricing, customer lists, or schedules, the protective order over that information extends to the studies. In such an event, the parties are to maintain confidentiality according to the terms of the protective order.

    ii.    *Defendant's Trade Secrets Create Good Cause for a Protective Order*

Here, the Court considers both the interest in enforcing the CWA and Defendant's need to keep trade secrets confidential. Both are significant objectives. Plaintiffs apparently concede that a protective order over price-related information is appropriate. Dkt. No. 93, p. 10 ("[Plaintiffs] are not interested in information pertaining to specific equations that BNSF uses to set its pricing"); Dkt. No. 97, pp. 3, 5 ("[S]pecific financial information related to pricing" and "bills of lading and receipts" are discussed as appropriate for a protective order). However, Plaintiffs argue, the identities of railway customers, purchasers, owners, and lessees should not be subjected to a protective order, lest the Court "essentially exempt [them] from liability under the [CWA.]" Dkt. No. 93, p. 14.

---

[2] The parties debate whether or not the studies constitute "effluent data" under Section 308 of the CWA. However, the Court finds the analysis much simpler: Defendant has not clearly established that disclosure of the studies is likely to pose a concrete, specific harm to its business.

ORDER GRANTING DEFENDANT'S
PROTECTIVE ORDER IN PART
PAGE - 5

While responses to Interrogatories 1–5 are to be produced, Defendant has satisfied its burden to extend a protective order over these disclosures. Dkts. No. 88–92. Public disclosure of its trade secrets would (1) provide unfair advantage to its competitors in predicting its market strategy and pricing, (2) prejudice its relationship with its customers, and (3) provide unfair advantage to its competitors in negotiating contracts in the Pacific Northwest. Dkt. No. 92, p. 5.

To the extent that study results (Interrogatory 5) contain trade secret information warranting protection—such as specific details about Defendant's schedule, pricing, and customer list—that information should also be treated as confidential under the protective order and redacted in any submissions to this Court. The studies are not otherwise included in the protective order.

    iii.    *Limitations on Protective Order to Ensure the CWA is not Undermined*

The proposed protective order requires the parties use protected material solely for "prosecuting, defending, or attempting to settle this litigation." Dkt. No. 88, Attachment 1, p. 3. The Court understands this language to authorize the joining of additional defendants. The Court does not take lightly the importance of including all potentially liable parties in this suit.

The Court recognizes that allowing additional parties to be added to the suit, in practice, constitutes a public disclosure of information otherwise subject to this protective order. While Defendant's risk of financial and commercial harm has been well established, this risk may not be leveraged as a means of circumventing liability under the CWA. To prevent Plaintiffs from adding parties to the suit in discovery would be, in effect, to exempt those other parties and to "undermine a primary objective of the [CWA.]" *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1146 (10th Cir. 2005).

The CWA is a remedial statute intended to control the discharge of pollutants into

navigable waters. *See Pub. Interest Research Grp. of New Jersey, Inc. v. Top Notch Metal Finishing Co.*, CIV. A. 87-3894, 1988 WL 156725, at *8 (D.N.J. Dec. 23, 1988); *Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority*, 693 F. Supp 1324, 1329 (D. Puerto Rico July 10, 1988) (reversed on other grounds). The Act is, therefore, afforded a liberal construction to achieve its purposes. *See Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987); *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).

The addition of parties to the suit may make public the fact that those entities are Defendant's customers. However, all details around pricing, schedules, and the terms of Defendant's agreements with its customers are to remain confidential under this protective order.

**D.      Changes to the Proposed Protective Order**

The Court adopts the proposed protective order (Dkt. No. 88, Attachment 1) with the following changes:

   i.   The Court declines to adopt the two-tiered system in Defendant's proposed protective order, finding one designation sufficient to protect Defendant's interests. Instead, the Court designates all protected material as "Confidential."

   ii.  As such, § 2 is modified to include the responses to Interrogatories 1–4 as "Confidential." Responses to Interrogatory 5 are removed from this list.

   iii. § 3 (designating "Highly Confidential-Attorneys' Eyes Only" Material) is stricken. Any reference to "Highly Confidential-Attorneys' Eyes Only" Material is likewise stricken.

   iv.  § 5.3 (Disclosure of "Highly Confidential-Attorneys' Eyes Only") Material is stricken.

      v.      Any modifications of this protective order must be approved and signed by the Court

      vi.      The Court may change the terms of the protective order on its own motion after notice to the parties and an opportunity to be heard.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for a protective order (Dkt. No. 88) is GRANTED in part. As Defendant is required to disclose its responses to Interrogatories 1–5 subject to a protective order, Plaintiff's motion to compel (Dkt. No. 93) is likewise GRANTED in part.

DATED this 29 day of October 2014.

                                              *John C. Coughenour* (signature)

                                              John C. Coughenour  
                                              UNITED STATES DISTRICT JUDGE