UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIERRA CLUB, *et al.*, | CASE NO. C13-0967-JCC |
| Plaintiffs, | CONSENT DECREE |
| v. | |
| BNSF RAILWAY COMPANY, | |
| Defendant. | |

This matter comes before the Court on the parties' motion to enter their proposed consent decree (Dkt. No. 374). The United States has no objection to entry of the proposed consent decree. (Dkt. No. 383.) Having thoroughly considered the motion and the relevant record, the Court hereby GRANTS the motion and ENTERS the following consent decree:

**WHEREAS**, Plaintiffs Sierra Club, Puget Soundkeeper Alliance, RE Sources for Sustainable Communities, Columbia Riverkeeper, Friends of the Columbia Gorge, Spokane Riverkeeper, and Natural Resources Defense Council (collectively, Plaintiffs) filed a complaint in this Court seeking civil penalties, as well as declaratory and injunctive relief, against Defendant BNSF Railway Company (BNSF and collectively with Plaintiffs, the Parties) and others on June 4, 2013, alleging violations of the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, (the CWA or the Act);

**WHEREAS**, Plaintiffs filed a separate complaint in the United States District Court for the Eastern District of Washington similarly alleging that BNSF and others had violated the CWA (assigned Civil No. 2:13-cv-00272 (E.D. Wash.) and hereafter referred to as the Eastern District Action);

**WHEREAS**, the Eastern District Action was transferred to this Court and assigned Civil No. 2:14-cv-00660, after which it was consolidated with the above-captioned civil action (Dkt. No. 84) (the Litigation);

**WHEREAS**, subsequent to consolidation, on May 6, 2015, Plaintiffs filed their third amended complaint (Dkt. No. 113) naming only BNSF as a Defendant;

**WHEREAS**, prior to filing their initial complaint, Plaintiffs sent to BNSF and others Notices of Intent to Sue dated April 2, 2013, and May 9, 2013, in which they stated their intent to assert claims for alleged violations of CWA sections 301 and 404, 33 U.S.C. §§ 1311, 1344, and the Rivers and Harbors Act of 1899, 33 U.S.C. § 403, *et seq.*, and further asserted that "[t]he pollutants that the Dischargers have discharged, are discharging, and will continue to discharge include, but are not limited to, coal, coal chunks, coal dust, metabolites or related byproducts of coal, surfactants applied to the coal, coal chunks and coal dust, petcoke, petcoke chunks, petcoke dust, and suppressants";

**WHEREAS**, CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the unpermitted discharge of any pollutant to waters of the United States;

**WHEREAS**, Plaintiffs brought their action against BNSF for alleged CWA violations pursuant to Section 505 of the Act, 33 U.S.C. § 1365;

**WHEREAS**, BNSF is a Class I railroad operating in 28 states. BNSF transports freight, including a number of commodities, for a wide range of customers. As a Class I railroad, BNSF operates as a common carrier subject to the jurisdiction of the Surface Transportation Board (STB). BNSF's status as a common carrier requires the railroad to provide transportation of goods on reasonable request;

**WHEREAS**, coal and petroleum coke (petcoke) are among the commodities that BNSF transports for its customers. BNSF transports coal, petcoke, and other commodities in open-top railcars in the State of Washington and several other states;

**WHEREAS**, Paragraph 48 of Plaintiffs' third amended complaint alleges that "[e]ach and every coal train and each and every rail car carrying coal discharges coal pollutants to waters of the United States when traveling adjacent to, over, and in proximity to waters of the United States." Paragraph 3 of the third amended complaint defines "coal pollutants" to include "coal, coal chunks, coal dust, metabolites or related byproducts of coal, and other substances or materials added to the coal including, but not limited to, surfactants and suppressants, and petroleum coke." The third amended complaint further alleges that BNSF did not obtain any permit to discharge any pollutants from its railcars;

**WHEREAS**, BNSF asserted defenses to the allegations contained in the third amended complaint, expressly denies Plaintiffs' allegations in their entirety, and admits no liability by entering this Consent Decree;

**WHEREAS**, the Parties recognize that this Consent Decree is a settlement of a contested matter;

**WHEREAS**, the objective of the Parties in entering this Consent Decree is to resolve the Litigation; and

**WHEREAS**, the Parties acknowledge that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation, and the Court, in entering this Consent Decree, finds that this Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, without the admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties,

**IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

### I. GENERAL PROVISIONS

1. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the subject matter of this action

and the Parties pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a). Venue is proper in this judicial district pursuant to section 505(c) of the Act, 33 U.S.C. § 1365(c), because the complaint alleges that discharges in violation of the Act occurred in this judicial district. BNSF does not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

2. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction for the purposes of issuing such further orders and directions as may be necessary and appropriate for the implementation or modification of this Consent Decree, enforcing compliance with, or resolving disputes regarding the provisions of this Consent Decree.

3. <u>Reservation of Rights</u>. The Parties reserve the right to enforce the terms of this Consent Decree and take any action authorized by federal or state law not inconsistent with this Consent Decree.

4. <u>Parties Bound</u>. This Consent Decree shall be binding upon Plaintiffs, BNSF, and their respective officers, agents, servants, employees, successors, and assigns.

5. <u>Counterparts</u>. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

6. <u>DOJ and EPA Review</u>. The Parties recognize that, under 33. U.S.C. § 1365(c)(3), this Consent Decree can be entered only forty-five (45) days after the Attorney General of the United States and the Administrator of the Environmental Protection Agency receive a copy of this proposed Consent Decree. Plaintiffs shall serve copies of the executed Consent Decree upon the Administrator of the United States Environmental Protection Agency, the Attorney General, and the Regional Administrator for EPA Region 10, and Plaintiffs shall provide notice to the Court of the foregoing requirements, as required pursuant to 40 C.F.R. § 135.5.

7. <u>Final Judgment</u>. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final, non-appealable judgment of the Court under Rules 54

and 58 of the Federal Rules of Civil Procedure.

## II. CAR COVER STUDY

8. BNSF shall conduct a study to assess the commercial and operational feasibility of car covers for use on open-top coal and petcoke railcars (the Car Cover Study). In its sole discretion, BNSF may conduct this study in cooperation with various interested stakeholders, including without limitation, the Association of American Railroads, its customers, mine operators located in the Powder River Basin, or others invited by BNSF, to the extent they may agree to participate. It is anticipated that the Car Cover Study will occur over a period of approximately two years following entry of this Consent Decree.

9. BNSF's obligation to conduct the Car Cover Study under Paragraph 8 shall require BNSF to assess only car cover designs for which a functioning prototype is reasonably available to BNSF within six months of the date of entry of this Consent Decree. As part of the first phase of the Car Cover Study, BNSF shall conduct outreach and solicit participation from car cover manufacturers.

10. This Consent Decree shall not be construed to require BNSF to assess any conceptual car cover design or develop any car cover design. As between the Parties, BNSF is exclusively responsible for conducting and overseeing the Car Cover Study, as well as arranging for equipment and personnel.

11. Once during each six-month period (January–June and July–December of each year) until the conclusion of the Car Cover Study, BNSF shall provide to Plaintiffs electronic copies of final versions of all reports, technical specifications of car cover designs, testing results, testing procedures, and testing data created for the Car Cover Study. Prior to receiving any such information pursuant to this Paragraph, each Plaintiff organization shall execute a confidentiality agreement acceptable to all study participants, including without limitation any companies whose covers will be assessed. Plaintiffs acknowledge that BNSF reserves the right to redact cover manufacturer-, customer-, mine- and utility-specific information in any document provided

pursuant to this Paragraph, and Plaintiffs agree that the redaction of such information shall not be a basis for challenging the adequacy of BNSF's compliance with this Paragraph. In the event that Plaintiffs contend that any information redacted by BNSF prevents Plaintiffs from assessing compliance with this Consent Decree, Plaintiffs may invoke the Dispute Resolution provisions in Section VIII to contest the necessity for such redactions.

12. If, in its sole discretion, BNSF determines that any car cover design assessed under Paragraph 8 is commercially and operationally feasible, then BNSF shall undertake good faith efforts to amend the safe harbor provision of BNSF Price List 6041-B (the Coal Loading Rule) to add such car cover design(s) within 90 days of the conclusion of the car cover study. A decision by the STB concluding that any amendment to the Coal Loading Rule proposed pursuant to this Paragraph is unreasonable or otherwise invalid shall not constitute the basis for any allegation that BNSF has not complied with its obligations under this Consent Decree.

13. For the purpose of Section II, commercial and operational feasibility of a car cover design shall mean that a particular car cover (a) when used during loading and unloading operations, and in transit, poses no unreasonable risk of property damage or of bodily harm to BNSF employees, employees of any shipper for which BNSF transports coal and/or petcoke, employees of any mine, or to the general public; (b) can be physically attached to existing open-top railcars transported by BNSF without unreasonable modification to such railcars, (c) will function properly and as intended throughout all operational conditions encountered by BNSF trains while in-transit, (d) complies with all applicable regulatory requirements and industry equipment and interchange rules, (e) conforms to all applicable BNSF clearance and operational requirements, (f) requires no unreasonable modifications to equipment or processes used in loading or unloading coal and petcoke into or out of railcars, (g) would not be unreasonably expensive to procure, install, operate, replace, repair, or maintain; and (h) otherwise meets the requirements of the Coal Loading Rule. Notwithstanding any such determination of commercial and operational feasibility by BNSF, mines, shippers, or any other entity providing rail cars

cannot be required by BNSF to adopt or accept any specific railcar covers or associated modifications to equipment or loading or unloading processes.

14. In the event that BNSF determines in its sole discretion that there exists one or more car cover design that is commercially and operationally feasible under Section II, BNSF shall present the results of the Car Cover Study at the following rail transportation and coal industry meetings or conferences during the two-year period following the conclusion of the Car Cover Study: American Railway Engineering and Maintenance of Way Association meetings, the National Coal Transportation Association meetings, and the Railroad Environmental Conference. BNSF shall provide Plaintiffs with copies of any materials that BNSF uses to present the results of the Car Cover Study at those events.

### III. REMOVAL

15. BNSF shall remove significant accumulations of coal and/or petcoke materials in areas on or adjacent to BNSF's right-of-way at each of the locations identified in Appendix A to this Consent Decree, as identified at trial and in designated deposition testimony. BNSF shall complete this initial removal of accumulations of coal and/or petcoke materials from each of these locations no later than one (1) year from entry of this Consent Decree.

16. Within thirty (30) business days of completion of the removal of coal and/or petcoke material at each site required by Paragraph 15, BNSF shall notify Plaintiffs that the removal is complete. The notification shall include before and after photographs and other documentation reasonably necessary to demonstrate that BNSF has removed materials consistent with Paragraph 15.

17. BNSF shall conduct follow-up inspections of each area identified in Appendix A two times during the period of this Consent Decree. BNSF will use good faith efforts to conduct the first inspection between 9–12 months after service of the notification required by Paragraph 16, and the second 9–12 months after the preceding inspection, subject to the availability of sufficient track windows, and taking into consideration weather, safety, and other factors that

could restrict the time available to conduct an inspection. Within thirty (30) days of each inspection, BNSF shall provide Plaintiffs with a statement as to whether any significant accumulations of coal and/or petcoke materials require removal consistent with Paragraph 16.

18. In the event that BNSF identifies significant accumulations of coal and/or petcoke materials in areas on or adjacent to BNSF's property during either of the two subsequent inspections required by Paragraph 17, BNSF shall remove such materials in the same manner as in Paragraph 15. Within thirty (30) days of completion of any additional removal required by this Paragraph, BNSF shall notify Plaintiffs in writing that this additional removal is complete. The notification shall include photographs or other documentation reasonably necessary to demonstrate that BNSF has complied with its obligations under this Paragraph.

19. BNSF's obligation to remove significant accumulations of coal and/or petcoke material under Paragraphs 15 and 18 shall be limited to material on land. BNSF is only required to use non-invasive methods or techniques (e.g., vacuuming) to conduct the removal, and the means and methods to conduct the removal required under Section III are within BNSF's sole discretion. In no event shall BNSF be required under this Consent Decree to conduct any removal activities in any waterway, including any water of the United States, or conduct any ballast or track maintenance activities to remove materials from BNSF track, nor shall BNSF be obligated to remove non-significant accumulations or scattered, individual pieces or fragments of coal and/or petcoke material. BNSF shall not be required through this Consent Decree to remove coal and/or petcoke materials under Paragraphs 15 or 18 from any property in the event that any property owner declines to allow BNSF or its contractors access to their property under reasonable conditions.

20. In the event that Plaintiffs disagree with any determination that (a) BNSF has completed removal of significant accumulations of coal and/or petcoke material at any location under Paragraphs 15 and 18, (b) any subsequent inspection pursuant to Paragraph 17 identified no new and significant accumulations of coal and/or petcoke material that require removal, or (c) BNSF

has completed any subsequent removal of significant accumulations of coal and/or petcoke material required under Paragraph 18, Plaintiffs may invoke the Dispute Resolution procedures in Section VIII.

## IV. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

21. Within 30 days of the date this Consent Decree is approved by the Court, BNSF shall pay $1,000,000 to The Rose Foundation for Communities and the Environment for projects to improve water quality or habitat in the State of Washington (and, to the extent they may improve habitat or water quality of the Columbia River, in the State of Oregon). (*See* Dkt. No. 374-1.) Such payment shall be made by check payable and mailed to The Rose Foundation for Communities and the Environment, Attention: Tim Little, 1970 Broadway, Suite 600, Oakland, California 94612, and shall bear the notation "Sierra Club, et al. v. BNSF Railway Co., Clean Water Act Settlement," with a copy provided to Plaintiffs at the time payment is made.

## V. RELEASE AND COVENANT NOT TO SUE

22. Plaintiffs release BNSF for all claims that were or could have been brought in this litigation.

23. Plaintiffs covenant not to sue BNSF system-wide under the Clean Water Act or analogous state law or any common law theory on the theory of material leaving open-top rail cars and entering waters of the United States or waters of any state for any events or occurrences arising over the next five (5) years.

24. Any information provided by BNSF to Plaintiffs pursuant to this Consent Decree shall not be admissible in any proceeding against BNSF or any entity that meaningfully participates in the Car Cover Study (as that term is defined in Section II). Notwithstanding the previous sentence, information provided by BNSF to Plaintiffs pursuant to this Consent Decree may be used in proceedings to enforce the terms of this Consent Decree.

25. If the Consent Decree is terminated prior to five (5) years from the date of entry of the Consent Decree, the provisions of Paragraphs 23 and 24 shall survive for the remainder of the

CONSENT DECREE
PAGE - 9

five (5) year term of the covenant not to sue.

26. The Parties agree that, as of the date of the entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in the third amended complaint. To the extent that any Party previously implemented a litigation hold to preserve documents or electronically stored information related to the Litigation, the Party is no longer required to maintain such litigation hold. Nothing in this paragraph relieves any Party of any other obligations imposed by this Consent Decree or of the obligation to implement a litigation hold concerning the rights, obligations, and duties set forth in this Consent Decree.

## VI. ATTORNEY FEES AND COSTS

27. By entering into this Consent Decree, BNSF in no way acknowledges or concedes that Plaintiffs are entitled to recover any costs of litigation (including attorney fees or expert witness fees).

28. Notwithstanding Local Civil Rule 54, within sixty (60) days of entry of this Consent Decree, Plaintiffs may file with the Court a petition under 33 U.S.C. § 1365(d) seeking an award of attorney fees and litigation costs (including but not limited to expert witnesses' fees and costs). BNSF reserves the right to contest such a petition.

## VII. FORCE MAJEURE AND EXCUSABLE DELAYS

29. BNSF shall perform all requirements under this Consent Decree in the manner and within the time limits established herein, unless performance is delayed or prevented by Force Majeure or Excusable Delay, which are defined for purposes of this Consent Decree as events or circumstances arising from causes not reasonably foreseeable and beyond the control of BNSF, or any entity controlled by BNSF or BNSF's contractors, which delay or prevent performance of any obligation under this Consent Decree despite due diligence and best efforts to fulfill the obligation. Events and circumstances beyond the control of BNSF may include, without limitation, earthquake, flood, hurricane, severe weather or other acts of God, war, riot, fire, injunction, labor stoppage, freight embargo, material shortages, and compliance with any law,

rule, or decree of any governmental body, either now existing or hereafter created, that conflicts with the requirements or obligations of this Consent Decree. Such events and circumstances do not include normal inclement weather, financial inability to complete the work, increased cost of performance, changes in BNSF's business or economic circumstances, or the failure to obtain federal, state, or local permits, authorizations and approvals, unless BNSF has made timely and complete application for such permits, authorizations, and approvals.

30. BNSF shall notify the Plaintiffs in writing within ten (10) business days after becoming aware of an event or circumstance that BNSF believes constitutes Force Majeure or Excusable Delay that may prevent or delay performance of an obligation under this Consent Decree. BNSF's notification shall describe in detail the anticipated length of the delay, the precise cause or causes of the delay, the measures taken and to be taken by BNSF to prevent or minimize the delay, and a timetable by which those measures will be implemented. BNSF shall adopt all reasonable measures to avoid or minimize any such delay. BNSF shall include in the notification a proposed extension of the deadline associated with any obligation under this Consent Decree whose performance may be prevented or delayed by unforeseeable events or circumstances beyond BNSF's reasonable control.

31. Unless BNSF's notice contains no reasonable basis to conclude that the circumstance, event, or anticipated event identified in the notice has caused or will cause a delay that constitutes a Force Majeure or Excusable Delay, the time for performance shall be extended by an appropriate period substantially equal to the necessary delay.

## VIII.   DISPUTE RESOLUTION

32. The Dispute Resolution procedures of this Section shall be the exclusive mechanism for the parties to raise and resolve disputes arising under or with respect to this Consent Decree (Covered Dispute).

33. A Covered Dispute shall be considered to have arisen when one Party sends the other Part(ies) a written Notice of Dispute.

34. Any Covered Dispute shall, in the first instance, be the subject of informal negotiations between the Parties in an attempt to resolve the dispute in good faith and in an expeditious manner. The Parties shall have thirty (30) days following receipt of a Notice of Dispute to reach agreement.

35. If the Parties cannot reach agreement on the dispute during the 30-day period provided under Paragraph 33, Plaintiffs and BNSF shall jointly file a motion with the Court requesting resolution of the Covered Dispute. Plaintiffs and BNSF shall append to that motion written statements not to exceed five (5) single-spaced pages (excluding attachments or exhibits) setting forth their respective proposed resolutions of the dispute.

36. The Parties shall comply with any written agreement reached as a result of informal negotiations conducted during the 30-day period provided for by Paragraph 33, including any extension of time to comply with a schedule or deadline required by this Consent Decree, so long as the agreement does not constitute a material change to any terms of this Consent Decree. Section X of this Consent Decree shall govern the process for any proposed material changes to the terms of this Consent Decree.

## IX. NOTICES

37. Unless otherwise specified herein, any notification, submission, statement of position, or communication required by this Consent Decree shall be made electronically, unless otherwise requested, and addressed as follows:

> As to Plaintiffs:  Charles M. Tebbutt, charlie@tebbuttlaw.com
> Daniel C. Snyder, dan@tebbuttlaw,com
> David Pettit, dpettit@nrdc.org
> Jessica Yarnall Loarie, jessica.yarnall@sierraclub.org
>
> As to BNSF:  Timothy M. Sullivan, tsullivan@bdlaw.com
> Dava Kaitala, Dava.Kaitala@BNSF.com
> Brooke Gaede, Brooke.Gaede@BNSF.com

//

38. Any Party may, by written notice to all other Parties, change its designated notice recipient or notice address provided above.

39. Notices submitted pursuant to this Section shall be deemed submitted upon electronic transmission, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## X. MODIFICATION

40. This Consent Decree contains the entire agreement of the Parties and shall not be modified by any prior oral or written agreement, representation, or understanding. Any non-material modification of this Consent Decree after entry may be made without approval of the Court but must be in writing and approved by the Parties.

41. Any material modification to any term of this Consent Decree shall be effective only upon approval by the Court.

42. A Party shall not petition the Court for modification without having first made a good faith effort to reach agreement with the other Part(ies) on such modification. Notwithstanding the above, any Party may, after having made such effort, petition the Court for a modification of this Consent Decree and the Court shall rule on any such petition pursuant to law in effect at such time. Any ruling by the Court on a petition for modification may be appealed by a Party in accordance with law.

## XI. TERMINATION

43. Upon completion of all of the work required by this Consent Decree, BNSF shall notify Plaintiffs in writing that it has fully satisfied all Consent Decree requirements. This notification shall indicate the case name and civil action number.

44. Should Plaintiffs disagree with BNSF's notification under Paragraph 43, Plaintiffs may invoke Dispute Resolution pursuant to Section VIII within ten (10) days of receipt of the

certification.

45. Following the notification that BNSF has completed all work required under the Consent Decree, either Party, or the Parties jointly, may move this Court to terminate this Consent Decree.

IT IS SO ORDERED.

DATED this 2nd day of May 2017.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

# APPENDIX A
# Removal Sites

| Description | Segment of BNSF Right Of Way Start | End |
|---|---|---|
| Rail Bridge at Drano Lake and Drano Lake Parking Area | 45.710015 N, 121.639022 W | 45°42'41.21"N 121°38'58.01"W |
| Confluence of White Salmon and Columbia Rivers | 45°43'42.30"N 121°31'15.54"W | 45.729216 N 121.524720 W |
| Confluence of Rock Creek and Columbia River | 45°41'23.24"N 121°53'15.21"W | 45°41'20.77"N 121°53'19.90"W |
| Horsethief Lake Site – Area in vicinity of public access to boat ramp and along the top of the causeway | 45.646089 N 121.096466 W | 45.639152 N 121.104766 W |
| Causeway near Murdock | 45.658225 N 121.198597 W | 45.658771 N 121.198875 W |