THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIERRA CLUB, *et al.*,

Plaintiffs,

v.

BNSF RAILWAY COMPANY,

Defendant.

CASE NO. C13-0967-JCC

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES

This matter comes before the Court on Plaintiffs' motion for attorney fees and costs (Dkt. No. 386). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I. BACKGROUND

The above-captioned matter was a Clean Water Act (CWA) citizen lawsuit in which seven environmental advocacy organizations alleged that Defendant BNSF Railway Company violated federal law by allowing its railcars to discharge coal and related pollutants into protected waterways within Washington. (*See* Dkt. No. 113.) Plaintiffs based Defendant's CWA violations on the alleged fact that "[e]ach and every train and each and every rail car discharges coal pollutants to waters of the United States when traveling adjacent to, over, and in proximity to the waters of the United States." (*Id.* at ¶ 48.) After multiple years of litigation, the Court denied the

parties' cross motions for summary judgment. (Dkt. No. 337.) After six days of trial, the parties reached a settlement in principle. (Dkt. No. 367.)

On May 2, 2017, the Court entered the proposed consent decree. (Dkt. No. 384.) Defendant is required to (1) perform a study of the viability of coal car covers; (2) remove and monitor the coal and petcoke at six separate sites; and (3) pay $1 million to The Rose Foundation for Communities and the Environment. (*See id.* at 5–9.) The consent decree also provides that Plaintiffs may move for reasonable attorney fees and litigation costs. (*Id.* at 10.) Plaintiffs filed this instant motion, arguing they are entitled to fees and that the requested fees are appropriate. (Dkt. No. 386.)

## II. DEFENDANT'S SURREPLY

Defendant filed a surreply to strike the declarations submitted with Plaintiffs' reply. (Dkt. No. 415.) Defendant argues the declarations contain legal arguments and offer new evidence. (*Id.* at 1.) The Court GRANTS the request to strike the declarations to the extent the declarations contain legal arguments in an attempt to circumvent the reply brief page limits. (*See, e.g.*, Dkt. No. 404 at ¶ 9.) However, the Court DENIES the request to the strike costs documentation exhibits. (*See, e.g.*, Dkt. Nos. 404-5, 405-1.) As detailed below, the documentation provided with the original motion was detailed enough to evaluate if the costs were reasonable. The Court does not need to rely on the reply exhibits. Therefore, these documents are not prejudicial and will not be stricken.

## III. MOTION FOR ATTORNEY FEES AND COSTS

Attorney fees and costs are awarded under the CWA if the Court finds that Plaintiffs are the "prevailing or substantially prevailing party" and that an award is "appropriate." *St. John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009) (citing 33 U.S.C. § 1365(d)).

### A. Prevailing Party

Plaintiffs are the prevailing party if (1) the settlement is judicially enforceable; (2) the

agreement materially alters the relationship between the parties; and (3) Plaintiffs obtained actual relief on the merits of their claims. *Id* at 1059. Defendant concedes that the first two elements are met, but makes the bold argument Plaintiffs did not obtain actual relief on the merits. (Dkt. No. 399 at 2.) Defendant is wrong.

Essentially, Defendant claims that because Plaintiffs did not obtain the exact relief they sought in their complaint, they are not the prevailing party. (Dkt. No. 399 at 2–3.) However, to obtain actual relief on the merits, "[t]he relief achieved need not be of precisely the same character as the relief sought in the complaint, but it must require defendants to do something they otherwise would not have been required to do." *St. John's Organic Farm*, 574 F.3d at 1059. This burden is not demanding. "[T]he amount of relief obtained may be much smaller than the amount sought" and it "need not be identical in form." *Id.* at 1060. There is no dispute that the relief Plaintiffs obtained in the consent decree requires Defendant to do something it otherwise would not have been required to do. The agreement requires substantial work at a significant cost to Defendant. Moreover, the relief achieved is parallel and similar to the relief originally requested. The Court will not entertain Defendant's argument any further. Plaintiffs are the prevailing party.

**B. Appropriate Attorney Fees and Costs**

After agreeing in their reply to reduce some requests, Plaintiffs ultimately request $3,549,095.62 in attorney fees and $298,331.14 in costs, totaling $3,847,426.76. As a preliminary note, this case was vigorously litigated for many years, as evidenced by over 400 docket entries and the nearly 10,000 hours Plaintiffs' counsel worked on the matter. The complexity of the issues and the intensity of litigation counsels a substantial attorney fees and costs award to the prevailing party, Plaintiffs.

1. <u>Attorney Fees</u>

Attorney fees are calculated using the "lodestar" method, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Camacho v.*

*Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). In *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), the Ninth Circuit listed a number of factors district courts should consider in making their determination of both the number of hours reasonably expended and a reasonable hourly rate. "Among the factors identified by *Kerr* as relevant to the determination of a reasonable fee are the following: experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986).

    a. *Hours Expended*

Defendant does not argue that Plaintiffs spent too many hours on this case in proportion to the magnitude of their allegations. (Dkt. No. 399 at 4.) Instead, Defendant argues that Plaintiffs worked too many hours because the allegations were "preposterous" and Plaintiffs' counsel overbilled in the ways described below. (*Id.*) The Court concludes Plaintiffs' claims were not preposterous. This is emphasized by the consent decree, which substantially alters Defendant's behavior, and the massive amount of evidence put forward at trial regarding coal and petcoke discharges. Therefore, Defendant's arguments that the attorney fees amount should be reduced because the lawsuit "overpromised" and the evidence "under-delivered," (*id.* at 11), are unpersuasive and will not be considered any further. The Court will address Defendant's overbilling arguments in the order they were briefed in the opposition.

*Unnecessary Work*: Defendant contends the Court should eliminate hours billed for unnecessary work including Plaintiffs' (1) improperly filed separate statement of material facts, (2) subpoenas which were either quashed or withdrawn; (3) motions regarding confidentiality designations; (4) lengthy trial brief; and (5) preparation of over 1,500 trial exhibits when approximately 250 were ultimately used at trial. (Dkt. No. 399 at 5.)

The Court concludes the improperly filed separate statement of material facts was unnecessary work. This district does not allow such documents to be filed. Regardless of whether or not the Court ultimately accepted the document, it was unnecessary work.

However, the other documents and exhibits were not unnecessary. If a plaintiff is the prevailing party, "she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings." *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991). Because Plaintiffs were the prevailing party, the unsuccessful motions and subpoenas are reasonable hours. Finally, the Court is unpersuaded that a lengthy trial brief and preparation of over 1,500 trial exhibits were unnecessary. The case was an incredible undertaking, alleging point source discharges at dozens of Washington waterways. The length of a trial brief and use of 250/1500 exhibits before the parties settled are reasonable. Therefore, the Court will DECREASE the hours, as recorded in declaration exhibit provided, for work spent on Plaintiffs' separate statement of material facts. (*See* Dkt. No. 400 at 43–51.)

*Block Billing:* Defendant also argues there are 1,945.7 hours that constitute inappropriate block billing or are too vague and the Court should decrease those hours by 20 percent. (Dkt. No. 399 at 6.) Block billing is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (internal quotations omitted). Plaintiffs bear the burden of documenting the appropriate hours expended and must submit evidence in support of those hours worked. *Id.* at 948.

The Court concludes that some of the challenged entries are vague and some of the entries are block billed. (*See, e.g.*, Dkt. No. 400 at 56 (numerous billings for "case mngmnt"); *id.* at 57 ("Prep for & w/Breidenthal; numerous consultations with clients, co-counsel" billed for 13 hours)). The Court agrees with Defendant's proposal and will DECREASE the block billed and vague hours, as recorded in declaration exhibit provided, by 20 percent. (Dkt. No. 400 at 53–67); *see Welch*, 480 F.3d at 948 (finding the district court's 20% reduction based on a report by the California State Bar's Committee on Mandatory Fee Arbitration, which concluded that block billing may increase time by 10% to 30%, was reasonable).

*Non-attorney Work*: Defendant avers the attorney rates for various entries should have

been billed at paralegal and clerical rates. (Dkt. No. 399 at 6.) In response, Plaintiffs agreed to deduct $10,363 from their fee request. (Dkt. No. 403 at 5.) After review of the entries in question, the Court concludes Plaintiffs' concession adequately addresses Defendant's concerns and the other entries were properly billed at attorney rates.

*Duplicative Work*: Next, Defendant argues the Court should deduct duplicative work, namely hours spent at depositions that were attended by more than one attorney. However, it is not uncommon for complex litigation to require and necessitate multiple attorneys at each deposition. Moreover, in complex and lengthy litigation, some "necessary duplication" is "inherent in the process of litigating over time." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court is unpersuaded by Defendant's complaints.

*In-house Attorney Work*: Defendant contends the Court should deduct hours worked by in-house counsel attorneys who did not play an active role in the litigation, namely because they did not make an appearance in this case. (Dkt. No. 399 at 6–7.) However, Plaintiffs argue they needed to enlist additional counsel to assist with this litigation and that all the hours submitted were for litigating the case, not time spent acting as a plaintiff. (Dkt. No. 386 at 9 n.3.)

The Court is unpersuaded by Defendant's complaints. Attorneys who do not appear in a case can still have an active role in the litigation. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822–23 (9th Cir. 2009). Moreover, there is no dispute these in-house attorneys would have been permitted to appear if they had applied. *See id.* The Court finds it entirely reasonable that in-house attorneys needed to be utilized as active participants in this time-consuming litigation. Additionally, Defendant's blanket challenge to the entries as "client work" is rejected. The Court has reviewed the entries and the in-house attorneys billed for legal work, not, for example, lobbying, policy discussions, or attendance at meetings as a client. The challenged in-house attorney work is reasonable.

*Travel Time*: Defendant argues attorney travel time should be deducted because Plaintiffs have not shown a law firm based in Eugene, Oregon, was necessary to handle a case in Seattle,

Washington. (Dkt. No. 399 at 7.) However, Plaintiffs have provided a declaration that states there are few, if any, firms nationwide or in Washington that have the "experience and willingness to accept the risk of reputation in a case of this magnitude going up against a corporation with such deep pockets and a reputation for no-holds-barred defense tactics." (Dkt. No. 392 at ¶ 7.) The Court agrees and concludes hiring an Oregon firm was not unreasonable. Therefore, travel fees to and from Oregon are also reasonable.

Defendant also contends the travel time should not be billed at the full hourly rate. (Dkt. No. 399 at 7.) However, the Ninth Circuit authority Defendant cites states the district court did not abuse its discretion by reducing travel time hourly rates because the results of the litigation were "not particularly impressive." *Lemus v. Burnham Painting & Drywall Corp.*, 426 F. App'x 543, 546 (9th Cir. 2011). The Court has already opined on the magnitude of the consent decree. "Reasonable attorneys' fees include reasonable travel time compensated at the full hourly rate." *United States v. City & Cty. of San Francisco*, 748 F. Supp. 1416, 1422 (N.D. Cal. 1990). Therefore, the Court will not reduce the hourly rates for travel.

*Litigation Against Non-BNSF Parties*: Finally, Defendant argues the hours Plaintiffs spent opposing an amicus brief and attempting to sue non-BNSF defendants should not be recoverable because Defendant took no position on these issues. (Dkt. No. 399 at 8.) The Court agrees. *See Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) (concluding fees against the Government would be unfair where the issues were only opposed by private defendants). Therefore, the Court will DECREASE the attorney fees for litigation against non-BNSF parties as recorded in the declaration exhibit provided. (Dkt. No. 400 at 191–196.)

b. *Hourly Rates*

To determine a reasonable hourly rate, "the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (internal quotations omitted). "Generally, the relevant community is the forum in which the district court

sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

Plaintiffs support their hourly rates with the declaration of Rodney Brown, a partner at a Seattle environmental law firm. (Dkt. No. 398.) Mr. Brown has extensive experience in the field of environmental law and believes the attorneys in this case, if they were in private practice, would command hourly rates at the highest end of the Seattle market. (*Id.* at ¶ 13.) This is partially because this case was one of first-impression and the litigation was a time-consuming and risky endeavor. (*Id.* at ¶ 11.) For example, Mr. Brown believes Charles Tebbutt, the most involved senior Plaintiffs' attorney, should be billed at $600/hour. (*Id.* at ¶ 14(a)(i).) Mr. Brown, who has similar experience and expertise, is billed at $575/hour in order for his firm to "maintain a competitive edge" in Seattle. (*Id.* at ¶ 17.)

Defendant challenges nearly every one of Mr. Brown's hourly rate proposals with the declaration of James Tupper. (Dkt. No. 401; Dkt. No. 400 at 313–14.) Mr. Tupper is another experienced environmental lawyer in Seattle. (*Id.* at ¶ 3.) Mr. Tupper agrees with the Seattle hourly rate ranges Mr. Brown proposes, but argues Plaintiffs' counsel should be compensated at lower rates. (*See id.*) For example, Mr. Tupper believes Mr. Tebbutt should be billed at the lowest rate in the agreed hourly range: $400/hour. (*Id.* at ¶ 10.) Mr. Tupper makes much of the fact that Mr. Tebbutt does not have as much experience as Mr. Brown and should not be billed at a higher rate. (*Id.* at ¶ 8.) Mr. Tupper also opines Mr. Tebbutt billed almost as many hours as his associate, Daniel Snyder, and that clients "would not expect or tolerate a senior partner billing at [a $600] hourly rate to be actively involved in a case to this extent." (*Id.* at ¶ 7.)

The Court concludes that Mr. Brown and Mr. Tupper both provide reasonable and credible opinions on the Seattle market hourly rates for environmental attorneys. The Court will give equal consideration to both declarants and split the difference between the two recommendations. (*See* Dkt. No. 400 at 313.) Plaintiffs' counsel will be billed at the following hourly rates:

//

- Charles M. Tebbutt: $500
- Daniel C. Snyder: $287.50
- Sarah A. Matsumoto: $275
- Dan Galpern: $330
- Elisabeth Holmes: $337.50
- Aaron Isherwood: $387.50
- Jessica Yarnall Loarie: $327.50
- Elizabeth Benson: $262.50
- Briana Fairbanks: $325
- Gregory Wannier: $260
- James Dougherty: $425
- Andrea Rodgers: $412.50
- Nathan J. Baker: $412.50
- Jeff Thompson: $325
- Gary Kahn: $500
- Lauran Goldberg: $312.50
- Brent Foster: $337.50
- Katelyn Kinn: $287.50
- David Pettit: $587.50
- Morgan Wyenn: $320
- Sarah Fort: $220
- Aaron Colangelo: $432.50

The remaining attorney, paralegal, and law clerk rates are uncontested and their hourly rates will remain the same. (*See id.*)

In sum, the Court AWARDS Plaintiffs the reasonable attorney fees requested with the hour and hourly rate deductions outlined above.

2. Litigation Costs and Expert Witness Fees

Plaintiffs are also entitled to "reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) (discussing a different fee-shifting statute). Here, Plaintiffs seek to recover litigation costs and expert witness fees. (Dkt. No. 386 at 12–13.) Defendant challenges both. (Dkt. No. 399 at 12–13.)

a. *Litigation Costs*

Plaintiffs ask for litigation costs including travel, meals, deposition costs, sampling and lab fees, telephone charges, and transcript fees. (*See* Dkt. Nos. 387-9, 390-4, 391-2, 393-3, 394-2, 396-2.) Defendant argues Plaintiffs did not provide enough detail in their litigation cost documentation for this Court to find the costs reasonable. (*Id.* at 12.) However, the Court has reviewed the documentation submitted with the motion and concludes the costs are reasonable and compensable. The Court does not need to review the additional documentation provided with the reply brief to make this conclusion. Plaintiffs' counsel included enough detail with column headings, dates, and descriptions in the original submission.

//

      b. *Expert Witness Fees*

Plaintiffs seek expert witness fees and costs for Drs. Breidenthal, Oris, and Nelson, and other consultants. (Dkt. No. 387-10.) Defendant argues Drs. Breidenthal and Oris's costs and fees should be excluded. (Dkt. No. 399 at 13.) Both arguments fail.

First, Defendant contends "the Court indicated [a *Daubert* motion to exclude Dr. Breidenthal] would likely have succeeded in a jury context," and therefore, his testimony was not valuable. (*Id.*) The Court found no such thing. (Dkt. No. 315 at 1 (denying the motion in limine without prejudice because there was "less danger" the trial court would be "unduly impressed by the expert's testimony or opinion in a bench trial").) The Court concludes Dr. Breidenthal provided valuable testimony and his costs are compensable. Moreover, the Court agrees with Plaintiffs' deductions to Dr. Breidenthal's fees submitted in their reply. (*See* Dkt. No. 402 at 7.)

Defendant also argues Dr. Oris's fees should not be awarded because he "did not provide value to Plaintiffs because he did not actually do any toxicology." (Dkt. No. 399 at 13.) However, the Court never made such a determination and denied Defendant's motion in limine to exclude Dr. Oris's testimony. (Dkt. No. 315 at 1.) The Court concludes Dr. Oris's costs are compensable.

In sum, the Court AWARDS the full amount of litigation costs and expert witness fees and costs: $298,331.14.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorney fees and costs (Dkt. No. 386) is GRANTED in part and DENIED in part. The parties are ORDERED to submit an updated accounting of attorney fees and costs consistent with this order within 14 days. In sum, the Court (1) deducted the hours spent on Plaintiffs' separate statement of facts; (2) deducted 20 percent of the block billed and vague hours; (3) deducted the hours spent on litigation against non-BNSF parties; and (4) reduced Plaintiffs' requested attorney hourly rates for the lawyers specified above.

DATED this 25th day of July 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE